889 P.2d 109

STATE of Idaho, DEPARTMENT OF LAW ENFORCEMENT, by and through Richard L. CADE, Director, Plaintiff–Respondent,

v.

ONE 1990 GEO METRO, Vin 2C1MR2464L6012694, One 1985 Pontiac Trans Am, Vin 1G2FW87F6FL617478, and their equipment and appurtenances, $7,484.83 in a Bank of Commerce account, and $803.00, United States Currency, Defendants,

and

Lino R. Mitchell, Claimant–Real Party in Interest–Appellant.

No. 20519.

Court of Appeals of Idaho.

Feb. 2, 1995.

Lino R. Mitchell, pro se appellant.

Larry EchoHawk, Atty. Gen., Clayne S. Zollinger, Jr., Deputy Atty. Gen., Rupert, for respondent.

LANSING, Judge.

The Idaho Department of Law Enforcement (the Department) brought this action for forfeiture of two automobiles, funds in a bank account, and $803 in United States currency. The Department's complaint alleged that these assets had been used or were intended for use in connection with the illegal manufacture, distribution or possession of controlled substances, or were proceeds from the sale of controlled substances. Appellant Lino R. Mitchell filed a claim in the action, alleging that he was the owner of these assets and that they were neither proceeds of nor used in the conduct of illegal activities. Following the withdrawal of Mitchell's counsel, a default judgment was entered against Mitchell. Acting pro se, Mitchell moved to set aside the default judgment, which motion was denied by the district court. From that adverse decision, Mitchell appeals.

The Department contends that Mitchell's appeal is moot and therefore must be dismissed. We conclude that the appeal is not moot and that the district court abused its discretion in refusing to set aside the default judgment. Therefore we reverse the order denying Mitchell's motion and remand this case for further proceedings.

## I.

## BACKGROUND

In May 1991, the Bonneville County Drug Task Force began investigating Mitchell's activities because he was suspected of drug trafficking. The investigation culminated in Mitchell's arrest. Mitchell was evidently convicted of at least one state or federal offense, for he was eventually incarcerated in the Idaho State Penitentiary and later at a federal correctional institution in Colorado. The nature of the offense or offenses for which Mitchell was convicted is not disclosed in the record before us.

On June 19, 1991, a complaint *in rem* was filed by the Department in the district court for Bonneville County pursuant to I.C. § 37–2744 seeking forfeiture of certain of Mitchell's assets, namely $803.00 dollars in United States currency, a 1990 Geo Metro, a 1985 Pontiac Trans–Am, and a bank account containing $7,484.83. The complaint alleged that the money had either been used or was intended for use in the manufacture, possession or distribution of marijuana or cocaine, or was the proceeds of the sale of such substances, and that the two automobiles had been used or were intended for use in the transport or concealment of controlled substances.

Mitchell appeared through counsel and filed an answer and a claim asserting that none of the assets were subject to forfeiture because they were neither the proceeds of drug trafficking nor used in the commission of any crime.

On February 27, 1992, Mitchell's attorney filed a motion for leave to withdraw as counsel. The court granted the motion by an order dated March 3, 1992, which included the following term:

> "IT IS FURTHER ORDERED, that if claimant fails to file and serve an additional written appearance in the action, either in person or a [sic] newly appointed attorney within such twenty (20) day period, such failure shall be sufficient ground for entry of default and default judgment against claimant or dismissal of the action against claimant, with prejudice, without further notice."

This proviso in the order was clearly intended to comply with I.R.C.P. 11(b)(3), which precludes, for a period of twenty days after withdrawal of an attorney, any action in the proceeding that would adversely affect the withdrawing attorney's client. The rule also requires that the order for withdrawal include a warning to the client that a default judgment may be entered if the client neither appoints new counsel nor files a notice of appearance pro se within the twenty-day period.

On March 13, 1992, only ten days after the order for withdrawal of Mitchell's attorney, the Department moved for default judgment pursuant to I.R.C.P. 55. Both the motion and a supporting affidavit asserted as grounds for the default that Mitchell had failed to answer the complaint. On March 13, the district court granted the requested default judgment despite its previous order that no action could occur in the case for twenty days following the withdrawal of Mitchell's counsel and despite the fact that the asserted basis for the default was incorrect inasmuch as Mitchell had in fact answered, filed a claim and conducted discovery.

On March 19, 1992, Mitchell wrote the district court expressing surprise at the entry of a default judgment less than twenty days after the withdrawal of his attorney and requesting an extension of time to retain new counsel. The district court forwarded a copy of this letter to the court-appointed attorney representing Mitchell in the underlying criminal proceeding, but did not directly respond to the letter.

The Department evidently realized that the March 13 default judgment had been improperly obtained, for in April 1992, it again moved for a default judgment, this time stating as grounds Mitchell's failure to make a new appearance pro se or through counsel within twenty days from the order allowing withdrawal of his attorney. The district court then granted a second default judgment on May 22, 1992, again ordering forfeiture of all of the assets named in the Department's complaint.[1]

On October 26, 1992, Mitchell, who by this time was incarcerated at a federal correctional institution in Englewood, Colorado, moved to set aside the default judgment pursuant to I.R.C.P. 60(b)(1) on the basis of excusable neglect. The district court denied Mitchell's motion. Mitchell appeals from the order denying his motion to set aside the judgment.

## II.

### ANALYSIS

#### A. MOOTNESS.

■ Before considering the merits of Mitchell's appeal we must address the Department's contention that the appeal should be dismissed as moot. An action is moot if, "it presents no justiciable controversy and a judicial determination will have no practical effect upon the outcome." *Idaho County Property Owners Association, Inc. v. Syringa General Hospital*, 119 Idaho 309, 315, 805 P.2d 1233, 1239 (1991).

■ The Department asserts that within eleven days after entry of the second judgment, and prior to Mitchell's motion to set aside the judgment, the property at issue was transferred to Bonneville County. According to the Department, because the *res* of the action is no longer in the Department's

---

1. About a month after filing the complaint, the Department dismissed the 1990 Geo Metro from the proceedings. Nonetheless, in both of its motions for default judgment the Department continued to seek forfeiture of this vehicle, and both default judgments, drafted by the Department's attorney, included the Geo.

possession or subject to its control, any decision of this Court reversing the judgment, and any ultimate judgment in favor of Mitchell on remand, would be useless. The Department argues that if a court finds that property in a forfeiture action is not subject to forfeiture, the only remedy expressly provided by the forfeiture statutes is that the court shall "order the property released to the owner." I.C. § 37–2744(d)(3)(D)(III). With the property no longer in its possession, the Department contends that any judgment ordering the property's return to Mitchell would be a useless gesture. Any other remedy, such as a money judgment for the value of transferred assets is, according to the Department, precluded by the state's sovereign immunity. We note that the Department's logic would make a district court judgment in a forfeiture action equally as unavailing as the decision of an appellate court if, after filing the action, the Department elected to dispose of the property before the district court could render a judgment.

The Department's argument is novel. It is uncommon to hear an agency of the state argue that it can, with impunity, unlawfully seize and dispose of property of a citizen, leaving the citizen without recourse and the courts without power to grant a remedy, because the state is immune from suit. The Department's argument raises questions as to (a) whether the waiver of sovereign immunity found in I.C. § 37–2744(d)(3)(D)(III) allows only judgments for restitution of the very assets seized and disallows money judgments against the state, and (b) whether the waiver of sovereign immunity found in Article I, Section 14 of the Idaho Constitution, which prohibits the taking of private property without just compensation, is a waiver of sovereign immunity with respect to claims for unjustified attempts by the state to forfeit private property.[2] We need not decide those questions of statutory and constitutional interpretation, however, because the Department's argument is flawed for other reasons.

First, even though Bonneville County is not a named party, it is the entity to which the assets were forfeited by terms of the default judgment. Any claim of the county to an interest in or title to the assets is derived from the judgment. An appellate decision setting aside the default judgment would, therefore, divest the county of the only basis for its claim of ownership of the property and would reinstate the jurisdiction of the district court over the assets. *See Republic National Bank v. United States,* 506 U.S. ——, ——, 113 S.Ct. 554, 557–59, 121 L.Ed.2d 474, 482–84 (1992). Accordingly, the Department's contention that this appeal can have utterly no effect is incorrect.

Second, the Department's mootness argument is premised upon a characterization of the facts that is not supported by the record and upon the Department's own noncompliance with the dictate of I.R.C.P. 17(a) that all actions shall be brought in the name of the real party in interest. According to the averments of the Department's complaint, the assets in question were seized by agents of the Bonneville County sheriff's office, and were at the commencement of the action and during the pendency thereof, in Bonneville County. The relief sought by the complaint was that the property be forfeited to the Bonneville County sheriff's office; the complaint did not seek forfeiture of any part of the property to the State of Idaho. There is no indication in the record that the property was ever in the custody or under the control of the Department. Therefore, it is not clear that the Department is accurate in its suggestion that the property was transferred from the Department to the county following entry of the default judgment against Mitchell. What is abundantly clear, however, is that Bonneville County, not the Department, is the real party in interest in this forfeiture action.

Property subject to forfeiture under I.C. § 37–2744 may be seized by any peace officer of this state, including state, county and city law enforcement officials. I.C. §§ 37–2744(b), 37–2701(w). Actions to forfeit the

---

2. Idaho Const. Art. I § 14 cl. 2 provides:
Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor.

seized property may be brought by either the Director of the Idaho Department of Law Enforcement or the prosecuting attorney of the county in which the property was seized. I.C. § 37–2744(d). The civil forfeiture statutes do not, however, authorize the Department to bring a forfeiture action in its own name as a representative of and for the benefit of another governmental entity.

■ Forfeiture proceedings are governed by the Idaho Rules of Civil Procedure. I.C. § 37–2744(d)(2). One of those rules, I.R.C.P. 17(a), specifies that "every action shall be prosecuted in the name of the real party in interest." A real party in interest within the meaning of I.R.C.P. 17(a) "is the person who will be entitled to the benefits of the action if successful, one who is actually and substantially interested in the subject matter." *Carrington v. Crandall*, 63 Idaho 651, 658, 124 P.2d 914, 917 (1942) (decision under statutory precursor of I.R.C.P. 17(a)).

In the instant case, Bonneville County was the only entity that stood to benefit from a judgment of forfeiture and was thus the real party in interest. Had the Department complied with Rule 17(a) and brought this action in the name of Bonneville County, the argument now advanced by the Department— that any appellate decision reversing the forfeiture judgment would be useless because the Department, as the only party plaintiff, has no control over the forfeited property— could never have been advanced. The county, which has possession and control over the assets, would have been a party to the litigation and subject to this Court's directives. Even though the county is not now a party, in the event of reversal of the forfeiture judgment and remand to the district court, Bonneville County can be joined as a party plaintiff pursuant to I.R.C.P. 19(a)(1).[3] If after the joinder of Bonneville County on remand, the district court were to order re-

lease of the property, such order would be enforceable against Bonneville County. The Department's "mootness" argument can be thereby obviated by proper pleadings.

For the foregoing reasons, a reversal of the forfeiture judgment on this appeal would not be ineffective or useless, and the appeal is not moot.

## B. DEFAULT JUDGMENT.

We thus reach the substance of Mitchell's appeal—his contention that the district court abused its discretion in refusing to set aside the default judgment.

■ The criteria for granting relief from a default judgment are set forth in I.R.C.P. 60(b). By terms of Rule 60(b)(1), relief is authorized upon proof of mistake, inadvertence, surprise or excusable neglect. A motion to set aside a default judgment under that rule is committed to the sound discretion of the trial court. Accordingly, the decision on such a motion will not be disturbed on appeal in the absence of an abuse of discretion. *Catledge v. Transport Tire Co., Inc.*, 107 Idaho 602, 607, 691 P.2d 1217, 1222 (1984); *Schraufnagel v. Quinowski*, 113 Idaho 753, 754, 747 P.2d 775, 776 (Ct.App.1987).

■ If "excusable neglect" under I.R.C.P. 60(b) is the ground asserted for the motion, a factual question is raised which "must be answered by examining what might be expected of a reasonably prudent person under similar circumstances." *Herzinger v. Lockwood Corp.*, 109 Idaho 18, 19, 704 P.2d 350, 351 (Ct.App.1985). The trial court must determine whether the litigant "engaged in conduct which, although constituting neglect, was nevertheless excusable because a reasonably prudent person might have done the same thing under the circumstances." *Schraufnagel*, 113 Idaho at 754, 747 P.2d at

---

3. I.R.C.P. 19(a)(1) states in part:
   A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave

any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. . . .

776. If the trial court makes findings of fact that are not clearly erroneous, applies to those facts the proper criteria under Rule 60(b)(1), and reaches a decision that follows logically from the application of such legal criteria to the facts found, then the trial court will be found to have properly exercised its discretion. *Id.; Avondale on Hayden, Inc. v. Hall,* 104 Idaho 321, 326, 658 P.2d 992, 997 (Ct.App.1983). Default judgments are not favored in the law. Therefore, in doubtful cases, the general rule is to allow relief from the default so that judgment can be rendered on the merits. *Herzinger,* 109 Idaho at 19, 704 P.2d at 351; *Orange Transportation Co. v. Taylor,* 71 Idaho 275, 280–81, 230 P.2d 689, 692–93 (1951).

Mitchell asserts that his neglect to enter a new appearance within twenty days after withdrawal of his attorney was excusable because the erroneous March 13, 1992, judgment induced Mitchell's inaction. By affidavit filed in support of his motion to set aside the judgment, Mitchell explained that upon learning of the March 13 judgment, and upon receiving no reply to his letter to the court questioning the propriety of that judgment and requesting an extension of time to secure new counsel, Mitchell believed that his claims had already been defeated. Because an adverse judgment had already been entered, Mitchell concluded there was no longer any point in making a new appearance pro se or through counsel. Although the Department did later, in April 1992, file and serve by mail a motion for a new default judgment and a notice of intent to take a new judgment, these documents evidently did not reach Mitchell, who was then going through a series of jail transfers. Mitchell's affidavit states that he did not learn of the Department's efforts to obtain a second judgment until after the May 22 judgment was entered.

In considering Mitchell's motion to set aside the May 22, 1992, default judgment, the district court stated that the judgment of March 13, 1992, was "not entered or sent out." This factual finding was incorrect. A signed judgment bearing the court clerk's filing stamp dated March 13, 1992, appears in the record on appeal. The judgment was also entered on the court's register of ac-

tions. Mitchell's letter to the district court of March 19, 1992, indicates that he had received a copy of that default judgment. Consequently, it is apparent that the judgment was both entered by the court and served on Mitchell, and the district court's finding to the contrary was clearly erroneous.

The district court concluded that Mitchell had not shown an adequate excuse for failing to make a new appearance pro se or through counsel before the May 22 judgment was issued. The court noted that the latter judgment was entered long after expiration of the twenty-day period following the withdrawal of Mitchell's attorney. Even if Mitchell received the March 13, 1992, judgment, the district court reasoned, "there was nothing to stop him from filing an appearance in the case and asserting his rights within the allotted twenty days."

We conclude that the district court's rationale is not well-grounded, for it fails to recognize that Mitchell was misled by the improper March 13 judgment which dissuaded him from making a new appearance in the action.

Pro se litigants are held to the same standards and rules as those represented by attorneys. *Golay v. Loomis,* 118 Idaho 387, 393, 797 P.2d 95, 101 (1990). Nonetheless, in determining whether the Rule 60(b) standard for excusable neglect has been met, the applicable inquiry is not, strictly speaking, what a lawyer would have done. Rather, we consider whether the movant's conduct was that which "might be expected of a reasonably prudent person under the same circumstances," *Hearst Corp. v. Keller,* 100 Idaho 10, 11, 592 P.2d 66, 67 (1979). *See also Baldwin v. Baldwin,* 114 Idaho 525, 527, 757 P.2d 1244, 1246 (Ct.App.1988); *Johnson v. Pioneer Title Co. of Ada County,* 104 Idaho 727, 732, 662 P.2d 1171, 1176 (Ct.App.1983). Erroneous and misleading acts by the court or the opposing party are plainly among the circumstances that merit consideration. In *Schraufnagel,* we discussed the effect upon a pro se litigant of a misunderstood notice from the trial court. "[W]e perceive a difference between persons whose indifference

leads to entry of judgment by default, and those who take affirmative steps to plead their own case but fail because they misperceive · the intent of a court document." *Schraufnagel,* 113 Idaho at 755, 747 P.2d at 777, (citation omitted). And in *Golay,* the Supreme Court, though affirming a magistrate's refusal to set aside a summary judgment on grounds of excusable neglect, observed that, "[h]ad the trial court affirmatively misled the appellant ... a different case would be presented." *Golay,* 118 Idaho at 392, 797 P.2d at 100.

In the case before us, the Department and the court misled Mitchell through entry of a judgment predicated on faulty grounds[4] during a period in which the litigation should have been held in abeyance pursuant to I.R.C.P. 11(b)(3). Here it was not the pro se litigant, but the Department and the court, who failed to comply with procedural rules. Mitchell brought the error to the court's attention by letter, but the court did not respond. Perhaps because of the district court's erroneous factual finding that the March 13 judgment was never entered or served, the court did not consider the most significant factor bearing upon the reasonableness of Mitchell's conduct—the impact of the March 13 judgment in dissuading Mitchell from further action. In these circumstances, we conclude that Mitchell has shown excusable neglect.

In addition to complying with the requirements of Rule 60(b), a party seeking to set aside a default judgment must also establish the existence of a viable defense.

> When moving to set aside a default judgment, the moving party must not only meet the requirements of I.R.C.P. 60(b) but must plead facts which, if established, would constitute a defense to the action.
>
> . . . .
>
> Once a default has been entered the pleading of defensive matter must go beyond the mere notice requirements that would be sufficient if pled before default. Factual details must be pled with particularity.

*Hearst Corp. v. Keller,* 100 Idaho at 12, 592 P.2d at 68; *see also Herzinger v. Lockwood Corp.,* 109 Idaho at 20, 704 P.2d at 352. The Department asserts that Mitchell has not pleaded facts showing a defense to the forfeiture complaint. We disagree.

■ In support of his motion to set aside the judgment Mitchell asserted that the seized funds were not proceeds of drug transactions but, rather, were earnings from his employment and that money used to purchase the Pontiac likewise came from his earnings. Mitchell stated in an affidavit that:

> "I have copies of check stubs, W–2, and other tax forms that can prove where the money, to buy the car and that was in the bank, came from. I could also call witnesses or get affidavits from them to verify that I was employed. Also I by using bank statements I have, I could provide a chronological analysis of the deposits and where the money came from, and the withdrawals and where the money went."

This affidavit goes beyond mere notice requirements and pleads facts which, if established, would entitle Mitchell to the relief requested.

■ The Department would, however, require that Mitchell not only plead these facts, but in addition, produce the documents to prove his defense. Such proof is not required at this stage of the proceedings. It is sufficient if the movant *pleads* with particularity facts which, *if proven,* would constitute a meritorious defense. *Hearst,* 100 Idaho at 12, 592 P.2d at 68; *Herzinger,* 109 Idaho at 20, 704 P.2d at 352; *Johnson,* 104 Idaho at 733, 662 P.2d at 1177. The facts constituting the defense may be asserted by affidavit or by a proposed answer or both. *Thomas v. Stevens,* 78 Idaho 266, 271, 300 P.2d 811, 814 (1956).

Because Mitchell has demonstrated that his inaction following withdrawal of his attorney was the product of excusable neglect and has pleaded a meritorious defense, we conclude that the district court abused its discretion in declining to set aside the default

---

4. As noted above, the Department based its motion for the first default on the incorrect assertion that Mitchell had not filed an answer to the complaint.

judgment. Therefore, we reverse the order of the district court and remand this case for further proceedings.

## C. REMAINING ISSUES.

Mitchell has also raised issues regarding lack of notice of the Department's motions for default judgment and the district court's denial of a requested continuance. Our holding that the default judgment should have been vacated on grounds of excusable neglect makes it unnecessary to address these issues.

We also note that the district court denied an application by Mitchell for appointment of counsel to represent him on this appeal. We do not here address the merits of that decision, and in view of our reversal of the default judgment against Mitchell, he has not been prejudiced by the lack of counsel at the appellate stage. Nevertheless, because Mitchell may again request the appointment of counsel when this litigation continues at the district court level, we will comment briefly on this issue for the guidance of the district court.

As the district court correctly observed, there is no general rule that due process requires the appointment of counsel in civil cases where the personal liberty of an individual is not at stake. *Lassiter v. Department of Social Services,* 452 U.S. 18, 26–27, 101 S.Ct. 2153, 2159–60, 68 L.Ed.2d 640, 649 (1981). Rather, in cases where personal liberty is not threatened, there exists a rebuttable presumption that the claimant is not entitled to appointed counsel. *Id.* This presumption may be overcome by application of the balancing test enunciated by the United States Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which requires consideration of (a) the private interests at stake, (b) the government's interest, and (c) the risk that the procedures used, with the claimant having no counsel, will lead to an erroneous decision. *Id.; Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2159. The district court recognized and applied this test when denying Mitchell's request for counsel on appeal. The district court also considered a decision addressing a similar request for counsel in a drug-related civil forfeiture case, *United States v. 1604 Oceola, Wichita Falls, Texas,* 803 F.Supp. 1194 (N.D.Tex.1992).

Subsequent to the decisions of the district court and of the federal court in *1604 Oceola,* however, there have been significant developments in the law of civil forfeitures and the constitutional implications of such cases. Foremost among them is the decision of our Supreme Court in *Idaho Department of Law Enforcement v. Real Property Located in Minidoka County, Idaho,* 126 Idaho 422, 885 P.2d 381 (1994), holding that civil forfeitures under I.C. § 37–2744A are subject to the excessive fines clause of the Eighth Amendment to the United States Constitution, and that claimants in forfeiture actions are entitled to a jury trial. *See also Austin v. United States,* 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (a civil forfeiture may constitute a punishment within the meaning of the excessive fines clause of the Eighth Amendment); *United States v. One 1978 Piper Cherokee Aircraft, Tail No. N5538V.,* 37 F.3d 489 (9th Cir.1994) (civil forfeiture following conviction in underlying criminal case is barred by double jeopardy); *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994) (same). *But see United States v. Tilley,* 18 F.3d 295 (5th Cir.1994) (prior civil forfeiture proceeding would not bar subsequent criminal prosecution under double jeopardy clause). At least one state court has held that these recent developments militate in favor of the appointment of counsel in civil forfeiture cases because they create legal complexities that increase the risk of erroneous deprivation of property. *Commonwealth v. $9,847.00 U.S. Currency,* 161 Pa.Cmwlth. 548, 637 A.2d 736 (1994). We imply no agreement or disagreement with any of the foregoing decisions from other jurisdictions; we mention them only because they may have bearing in the event that Mitchell renews his request for appointed counsel following remand.

## D. CONCLUSION.

The district court's order denying Mitchell's motion to set aside the default judgment is reversed, and the case is remanded for further proceedings. Appellant having been

granted permission to proceed in forma pauperis on appeal, no costs are awarded.

WALTERS, C.J., and PERRY, J., concur.